# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARIANITA M.,

        Plaintiff,

        v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 24 CV 7695

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Plaintiff Marianita M. appeals from the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion for summary judgment [13] is denied, the Commissioner's motion for summary judgment [19] is granted, and the denial of benefits is affirmed.[1]

## Background

In early 2022, plaintiff applied for disabled widow's benefits and supplemental security income based on an amended alleged onset date of December 10, 2021. [12-1] 17. The claim was denied initially, on reconsideration, and after a hearing by an administrative law judge (ALJ). [*Id.*] 17-27. The Appeals Council denied review in August 2024, *see* [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [12-1] 20.[3] At step two, the ALJ determined that plaintiff had the following severe

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [12], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [8].

[3] The ALJ also found that plaintiff was an unmarried widow of a deceased insured worker and met the non-disability requirements for disabled widow's benefits. [12-1] 19.

impairments: bipolar disorder/depression, anxiety disorder, attention deficit hyperactivity disorder, degenerative disc disease of the lumbar spine with radiculitis, asthma, status post left ankle fracture with open reduction internal fixation, and left ankle degenerative joint disease. [*Id.*] 20. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 20-22. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff could (1) never climb ropes, ladders, or scaffolds; (2) occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; (3) not tolerate exposure to pulmonary irritants; (4) understand, remember, and carry out simple instructions with sufficient persistence, concentration, or pace to timely and appropriately complete job duties; (5) make simple work-related decisions; and (6) tolerate occasional contact with supervisors, coworkers, and the general public. [*Id.*] 22-25. At step four, the ALJ ruled that plaintiff could not perform her past relevant work. [*Id.*]. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: housekeeper (200,000 jobs), assembler (25,000 jobs), and sorter (115,000 jobs). [*Id.*] 26-27. The ALJ accordingly held that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed and the case remanded because substantial evidence does not support the ALJ's rulings that plaintiff can perform light work and simple tasks. *See* [13] 7-15; [20] 3-5.

### A.    Light Work

Plaintiff first argues that the ALJ's determination that plaintiff can perform full-time light work lacks substantial evidentiary support. Plaintiff contends that the ALJ failed to support her finding that plaintiff's allegations regarding the nature and degree of her pain and resulting functional limitations were inconsistent with the record. [13] 7. Plaintiff also contends that the ALJ's decision is characterized by

"rampant cherry-picking" and a failure to discuss significant evidence that would have been consistent with a decision that plaintiff was disabled. [*Id.*] 7-9. Plaintiff maintains that the ALJ "drew improper inferences from sporadic unremarkable test results, her perception that treatment was mostly conservative, and [p]laintiff's ability to engage in some of the most basic activities of daily life[.]" [*Id.*] 9. For the following reasons, the Court concludes that the ALJ's subjective symptom determination was not patently erroneous.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Alejandro D. v. O'Malley*, No. 21 CV 5250, 2024 WL 4465475, at *5 (N.D. Ill. Oct. 10, 2024) (internal quotation marks omitted). "The ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "Flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that a claimant was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original; internal quotation marks and brackets omitted).

Here, substantial evidence supports the ALJ's ruling that plaintiff's subjective symptom allegations were not fully credible.

First, the ALJ reasonably concluded that plaintiff's allegations were inconsistent with objective medical evidence. *See Zayda Z. v. Bisignano*, No. 23 CV 2590, 2025 WL 2624869, at *3 (N.D. Ill. Sept. 11, 2025) (ALJ may consider whether objective evidence contradicts allegations of disabling limitations). The ALJ discussed the results of plaintiff's June 2020 EMG; her June 2021 MRI; her December 2022 x-rays; and physical examinations showing full range of motion in the upper extremities, decreased range of motion of the lumbar spine, and that her gait was sometimes slow but normal at other times. [12-1] 23-24. The ALJ concluded that this evidence and other treatment notes in the record were "largely unremarkable" [*id.*] 24, and plaintiff does not meaningfully challenge that characterization.

Second, the ALJ permissibly concluded that plaintiff's treatment course was "conservative." [12-1] 24; *see Renee E. v. Kijakazi*, No. 19 CV 7840, 2022 WL 3576662, at *12 (N.D. Ill. Aug. 19, 2022) (ALJ may "contrast[ ] the limited treatment Plaintiff obtained . . . with her allegations that [her] impairments . . . rendered her disabled"). As the ALJ pointed out, plaintiff's treatment for her physical impairments consisted primarily of "physical therapy sessions and lumbar epidural injections." [12-1] 24.

Plaintiff contends that the ALJ "conveniently ignored" the reasons why plaintiff's treatment consisted of only conservative modalities, including the fact that she was deemed not to be a candidate for surgery, *see* [13] 9, but the transcript of the hearing refutes this claim. The ALJ questioned plaintiff about her treatment by her spine doctor, who "wanted [plaintiff] to get surgery" and referred her to a neurosurgeon, and plaintiff's appointment with the neurosurgeon, who concluded that "she's not a surgical candidate" and recommended physical therapy. [*Id.*] 57-58. Given that the ALJ solicited this testimony, the mere fact that she did not discuss it in her written decision is insufficient to demonstrate that the ALJ "ignored" it. *See Brian J. v. Saul*, 438 F. Supp. 3d 903, 909-10 (N.D. Ill. 2020) (rejecting argument that ALJ erred by characterizing treatment as conservative without "advancing reasons why more aggressive treatment would have been appropriate and why Plaintiff did not obtain greater care" where "ALJ spent considerable time at the hearing doing just that").

Third, the ALJ was entitled to consider whether plaintiff's allegations were consistent with her reported activities of daily living. *See Alejandro D.*, 2024 WL 4465475, at *5. As the ALJ noted, plaintiff claimed that she would "sit[ ] in bed all day and night" and "cannot function[ ] socially," but plaintiff also admitted that she was able to drive, she regularly attended doctor's appointments, took showers, made simple meals, and completed minor household chores such as doing the laundry. [12-1] 23. Contrary to plaintiff's argument, moreover, *see* [13] 10, nothing in the ALJ's decision suggests that the ALJ equated plaintiff's ability to perform these activities with an ability to work full-time. And even accepting plaintiff's testimony that she had difficulty performing some of these activities, "the presence of contradictory evidence and arguments does not mean that the ALJ's determination is not supported by substantial evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

Finally, as the Commissioner emphasizes, *see* [19] 2-6, the ALJ's subjective symptom analysis was consistent with the opinions of the state agency reviewers, both of whom concluded that plaintiff could perform light work. The ALJ found these opinions to be "partially persuasive" but also concluded that "additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level justifies a conclusion that the claimant's impairments are more limiting than was concluded by the state examiner." [12-1] 25. For that reason, the ALJ limited plaintiff's postural activities to "occasional" and added environmental limitations to account for her asthma. [*Id.*]. Notably, the record contains no opinion statements from any of plaintiff's providers, let alone opinions that contradict the state reviewers' opinions or propose additional exertional restrictions. *Cf. Gedatus*, 994 F.3d at 904 ("A fundamental problem is [claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those set by the ALJ.").

Plaintiff's arguments to the contrary lack merit. Plaintiff faults the ALJ for failing to discuss certain physical therapy treatment notes from 2021 and 2022 and

other treatment notes from her appointments with a pain specialist in 2022 and 2023. *See* [13] 8-9 (citing [12-1] 444, 496, 509-12, 1182, 1192, 1323). But an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Furthermore, plaintiff has not identified, *see* [13] 8-11, an "entire line of evidence" that the ALJ failed to consider. *See Zayda Z.*, 2025 WL 2624869, at *3. Rather, the ALJ's decision demonstrates that the ALJ was aware of the subject matter addressed in these treatment notes: plaintiff's limited range of motion, *see* [12-1] 23-24; her persistent pain and altered gait, *see* [*id.*]; degenerative changes in her lumbar spine, as shown on the June 2021 MRI, *see* [*id.*] 23; and plaintiff's report that lumbar injections did not completely resolve her pain, *see* [*id.*]. For these reasons, and because "social-security adjudicators are subject to only the most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, the Court rejects plaintiff's argument.

Because the ALJ's subjective symptom determination was not patently erroneous, the Court rejects plaintiff's first ground for remand.

## B. Simple Work

Plaintiff argues that the ALJ failed to build a logical bridge between the evidence and her conclusion that plaintiff could sufficiently persist, concentrate, or maintain pace to perform simple work. [13] 11. Plaintiff contends that the ALJ's evaluation of the paragraph B criteria at step "seem[s] arbitrary and ar[o]se out of unsupported leaps of logic and false equivalencies." [*Id.*] 11-12. Finally, plaintiff insists that the ALJ failed to include a more detailed assessment of her mental functioning when assessing her RFC. [*Id.*] 12-13.

The ALJ's RFC assessment "must incorporate all of the claimant's limitations supported by the medical record." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Jennifer M. v. Bisignano*, No. 23 CV 2219, 2025 WL 2463059, at *2 (N.D. Ill. Aug. 26, 2025) (internal quotation marks omitted). "In assessing the claimant's mental RFC, the ALJ must consider–but is not required to adopt–the findings of state-agency psychologists." *Id.* (internal quotation marks and brackets omitted).

Here, plaintiff ignores that the ALJ's mental RFC assessment rests on the opinions of the state agency psychologists, both of whom opined that plaintiff could perform simple work.[4] At the initial level, Dr. Galassi-Hudspeth opined that plaintiff

---

[4] Plaintiff argues in her reply brief that the state agency reviewers' opinions cannot support the mental RFC assessment because the ALJ found that the opinions were only partly persuasive. *See* [20] 3-4. But the Court agrees with the Commissioner that this argument

was mildly limited in her ability to understand, remember, or apply information; to interact with others; and adapt or manage oneself but moderately limited in her ability concentrate, persist, or maintain pace (CPP). [12-1] 140. Dr. Galassi-Hudspeth then explained that, notwithstanding the moderate CPP limitation, plaintiff "should be able to meet the basic mental demands of simple and routine work tasks on a sustained basis, including the abilities to understand, carry out, and remember simple instructions" and "make judgments commensurate with the functions of simple work, i.e., simple work-related decisions[.]" [*Id.*] 144-45. At the reconsideration level, Dr. Tin assessed the paragraph B criteria in the same way as Dr. Galassi-Hudspeth, except that Tin opined that plaintiff was moderately (rather than mildly) limited in her ability to understand, remember, or apply information. [*Id.*] 161-62. Dr. Tin concluded that plaintiff could "maintain concentration and persistence to carry out simple and routine tasks and exercise judgment commensurate with this level of task." [*Id.*] 165. Finding these opinions to be "somewhat persuasive," the ALJ "agree[d] with the DDS consultants that the claimant's . . . mental impairments are not disabling" and limited plaintiff to performing simple work. [*Id.*] 22, 25.

The Court concludes that the ALJ's reliance on the opinions of the state agency reviewers–whom the applicable regulations recognize are "highly qualified experts in Social Security disability evaluation," *Lisa G. v. O'Malley*, No. 21 CV 5660, 2024 WL 4590745, at *7 (N.D. Ill. Oct. 28, 2024)–provides substantial evidentiary support for the mental RFC assessment. *See Marshall L. v. Dudek*, 2025 WL 4069855, at *1 (C.D. Ill. Aug. 11, 2025) (ALJ's mental RFC assessment, which rested on "mostly persuasive" opinions of state agency psychologist, was supported by substantial evidence). This is especially true where plaintiff has offered no contrary opinion evidence. *See Gedatus*, 994 F.3d at 904.

Plaintiff's arguments for a remand lack merit.

Plaintiff faults the ALJ for not explaining how she would be able to perform simple work with moderate CPP limitation, *see* [13] 12-13, but the ALJ permissibly relied on the state agency reviewers' narrative translation of their RFC assessments, which explained that the moderate limitation would not prevent her from performing simple work. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). The Court also rejects plaintiff's claim that the ALJ failed to consider the combined effects of her physical and mental impairments. *See* [13] 15. At the end of her RFC assessment, the ALJ made clear that plaintiff's "physical and mental impairments

_____

should have been raised in the opening brief and is thus forfeited. *See Patricia N. v. O'Malley*, Case No. 20-cv-50388, 2024 WL 366466, at *4 (N.D. Ill. Jan. 3, 2024) (argument raised for first time in reply brief is forfeited). In any event, while the ALJ did find the opinions only partly persuasive, the RFC assessment reflects that the ALJ fully credited the psychologists' opinions that plaintiff could perform simple work, notwithstanding her moderate CPP limitation.

are not disabling for the reasons listed above, including her conservative treatment history for her physical impairments[,] her varied activities of daily living, and her generally benign diagnostic, clinical, and mental status examination findings." [12-1] 25.

Regarding the ALJ's handling of the paragraph B criteria, plaintiff contends that the ALJ assumed that certain "benign findings" reflected in the treatment record "cancel[led] out" other, more negative findings. [13] 12. But "the ALJ never said that one [finding] cancelled the other out," *Acera B. v. Saul*, No. 20-cv-1674, 2021 WL 2222605, at *9 (N.D. Ill. June 2, 2021), and the Court finds plaintiff's arguments on this score to be unpersuasive because they ignore that the ALJ relied on the state agency reviewers' opinions that plaintiff's mildly or moderately impaired mental functioning would not preclude her from performing simple work. These psychologists reviewed the same evidence discussed by plaintiff in her brief and concluded–as did the ALJ–that plaintiff was mildly or moderately limited in her mental functioning but nevertheless able to do simple work. Plaintiff's rehashing of the evidence is an invitation for this Court to review that- evidence and weigh it differently, which the Court cannot do. *See Warnell*, 97 F.4th at 1052. To the extent that plaintiff faults the ALJ for failing to discuss specific treatment notes, the ALJ was not required to do so, *see id.* at 1053-54, and the fact that plaintiff experienced mental-health related symptoms does not mean, *ipso facto*, that the ALJ needed to include additional restrictions in the RFC–particularly where plaintiff offers no explanation for why these symptoms required additional work-related accommodations. *See Jane Y. v. O'Malley*, No. 23 C 1814, 2024 WL 689993, at *7 (N.D. Ill. Feb. 20, 2024) ("[c]omplaints alone do not establish limitations"). Finally, plaintiff faults the ALJ for giving some weight to the fact that plaintiff experienced a positive response to treatment, she did not require inpatient hospitalization, and she did not have suicidal and homicidal ideations. *See* [13] 13-14. But the efficacy and intensity of a claimant's treatment, as well as the intensity of her reported symptoms, are obviously relevant to whether a claimant's mental impairments are disabling, and the ALJ did not err by considering the extent to which this evidence did or did not support her claim. Finally, there is again no basis in the ALJ's decision to support plaintiff's exaggerated claim that the ALJ treated the lack of inpatient hospitalization or the absence of suicidal ideations as conclusive proof that plaintiff "can obtain or sustain gainful employment." [13] 15.

For these reasons, the Court rejects plaintiff's second ground for remand.

## Conclusion

Plaintiff's motion for summary judgment [13] is denied, the Commissioner's motion for summary judgment [19] is granted, and the denial of benefits is affirmed.

_Heather K. McShain_
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 19, 2026**